**Gary HENSLEY, Plaintiff-Appellant,**

v.

**Bernard CAREY, Robert Stanley, Theodore Williams, et al., Defendants-Appellees.**

**No. 86–1827.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1987.

Decided May 12, 1987.

Rehearing and Rehearing En Banc Denied July 16, 1987.

Kenneth N. Flaxman, Chicago, Ill., for plaintiff-appellant.

Sharon Baldwin, Office of Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before POSNER and COFFEY, Circuit Judges, and GRANT, Senior District Judge.[*]

COFFEY, Circuit Judge.

Plaintiff-appellant Gary Hensley appeals the district court's grant of a summary judgment in favor of defendants-appellees Theodore Williams and Robert Stanley on his claim that Williams and Stanley allegedly conducted a suggestive lineup which resulted in Hensley being arrested and confined for a period of 111 days. We affirm.

I.

On September 12, 1979, an unknown man followed Carol Pufpaf to her home at 4120 N. Campbell in Chicago, Illinois. While Pufpaf was entering the front door of her home, the unknown man entered the house through an unlocked rear door, confronted Pufpaf and forced her onto a bed. The assailant fled after Pufpaf and her seven year-old son started screaming. Pufpaf subsequently described the assailant as a white male with an olive complexion, dark brown hair, about 5′ 9″ in height, approximately 150 pounds in weight, and about 19 years of age.

Hensley, a white male, 18 years of age, with a blond military-style haircut, with light skin, is 6′ 0″ tall, weighed 165 pounds, and was a member of the United States

---

[*] The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

Marine Corps on active duty in the city of Chicago. Three days after the assault, on September 15, 1979, Hensley was stopped by a Chicago police officer who questioned him and asked for identification. The following day, two police officers visited Hensley's home in the company of Chris Vandenberg, a witness who had observed a man following Pufpaf into her home. Vandenberg identified Hensley in the presence of the police officers as the man he. had seen following Pufpaf. The two officers placed Hensley under arrest and conveyed him to the local police station.

During the evening of September 15, 1979 appellant Theodore Williams, a Chicago police officer, arranged for a lineup that included Hensley and five other white males. Hensley was the only person in the lineup wearing a short military-style haircut. Even though Williams was aware of this fact he and another officer, Detective John Beaumont, attempted to but were unable to locate any other white males with short haircuts, including members of the police department itself, to participate in the lineup. Appellant Robert Stanley, also a Chicago police officer, approved of the lineup, and the group was exhibited to Pufpaf. Pufpaf identified Hensley as her assailant, and Hensley was subsequently indicted on various criminal charges of burglary, attempted rape, and attempted robbery. Hensley, unable to post bond, remained in custody for 111 days while awaiting trial.

According to the prosecuting attorney assigned to the case, Pufpaf's seven-year-old son after observing Hensley at a preliminary hearing[1] stated to the mother "that is not the man," meaning that Hensley was not Pufpaf's attacker. According to police investigators, they believed Pufpaf's son had more than ample opportunity to view the assailant during the attack as he observed the assailant push his mother into the bedroom. After her son's comment, Pufpaf told the prosecuting attorney that she had not had a good look at her assailant and picked Hensley out of the lineup because of his short hair. While Pufpaf was not sure whether Hensley was her attacker after her son's comment, she maintained that her earlier description of the assailant had been accurate. At the hearing in which the state court dismissed the charges pending against Hensley, the prosecution stated:

"I spoke to the victim, Carol Pufpaf, about this at length and it was her opinion that she certainly was not now convinced and definitely decided the defendant was not the person who committed the crime in question. Carol expressed to me her opinion that she would stick by her original description and that the Defendant had dark brown hair and olive skin and the reason for picking him out of the lineup and being confused was the military look definitely portrayed by the Defendant in this case, the same type of military look that she recalled the Defendant or perpetrator of this crime having.

She further went on to say that she did not get a very good look at the offender on the date in question due to the fact that she was staring at a very large knife that he was jabbing towards her and pushing her into a bedroom."

The police re-evaluated the case and conducted a further investigation of Hensley's prior alibi that he had been elsewhere at the time of Pufpaf's attack and now convinced of Hensley's truthfulness released him on January 4, 1980.

On March 23, 1981, Hensley filed suit against Williams and Stanley pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights had been violated under the Fifth, Sixth, and the due process clause of the U.S. Constitution in that the officers had conducted a suggestive lineup. Hensley originally named Bernard Carey, the Cook County States Attorney, Williams, Stanley and various other defendants in his suit but the district court dismissed all but Williams and Stanley. Hensley appeals the

---

**1.** The record is unclear as to whether Pufpaf's son attended the hearing held on September 24, 1979 or on September 28, 1979.

district court's grant of summary judgment in favor of Williams and Stanley.

## II

"A grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Wainwright Bank & Trust Company v. Railroadmens Federal Savings & Loan Association of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986). Since the essential facts are not in dispute, we must determine whether the defendants, the moving parties, were entitled to judgment as a matter of law. "In order to determine whether the complaint [pursuant to 42 U.S.C. § 1983] [2] has alleged a deprivation of a federally protected right, it is necessary to identify the precise right that plaintiff seeks to vindicate." *Christman v. Hanrahan*, 500 F.2d 65, 67 (7th Cir.1974). In his complaint, Hensley alleges that his "due process and Fifth and Sixth Amendment rights were violated by the manner in which the line-up was conducted." In *Christman v. Hanrahan*, 500 F.2d 65 (7th Cir.1974), we affirmed the dismissal of a complaint under § 1983 and held that the plaintiff's Sixth and Fourteenth Amendment rights were not violated through prosecutorial misconduct which failed to result in an unfair trial. In *Christman*, this court rejected the suggestion that "the Due Process Clause ... provide[s] broad generalized protection against misdeeds by police or prosecution" and concluded that "the mission of the clause ... [is] avoidance of an unfair trial to the accused, and no violation ... result[s] unless the misconduct had some prejudicial impact on the defense." *Id.* at 67.

Hensley argues that the district court improperly granted summary judgment in favor of Williams and Stanley on his claim pursuant to 42 U.S.C. § 1983. He main-

tains that defendants-appellees deprived him of his Fifth, Sixth, and Fourteenth Amendment rights because they subjected him to an unduly suggestive lineup. The appellees maintain that they were entitled to a summary judgment as a matter of law since the Constitution does not guarantee a suspect an impartial lineup. This is a case of first impression since, as the district court stated, "it appears that no court has yet passed on whether police officers may be liable under § 1983 for conducting an improper lineup." 633 F.Supp. 1251, 1253 (N.D.Ill.1986).

Hensley bases his argument that his constitutional rights were violated and he should recover damages pursuant to 42 U.S.C. § 1983 relying on *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the United States Supreme Court held that whether a defendant's due process rights are violated through the admission of evidence at trial derived from an unnecessarily suggestive lineup or confrontation with a witness depends on the totality of the circumstances surrounding the lineup or confrontation. In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court described its holding in *Stovall* "as protecting an *evidentiary* interest." *Id.* at 113, 97 S.Ct. at 2252. Thus, the procedural safeguards established in *Brathwaite* and *Stovall* protect only against the admission of unreliable evidence at trial and does not establish a constitutional right to be free of suggestive lineups as Hensley argues.

In granting summary judgment for the defendants in this case, the district court reasoned that the procedural safeguards discussed in *Stovall* and *Brathwaite* pro-

---

**2.** 42 U.S.C. § 1983 (1982) states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

vide "no support for the plaintiff's contention that an improper lineup proceeding in itself constitutes a distinct and actionable constitutional wrong." *Hensley v. Carey*, 633 F.Supp. 1251, 1253 (N.D.Ill.1986). The court correctly stated that *Stovall* and *Brathwaite* "simply establish a prophylactic rule that protects a defendant's right to a fair trial by barring the admission of unreliable eyewitness identifications." *Id. Stovall* and *Brathwaite* establish a rule which bars the admission of unreliable identification evidence at trial. The rule against admission of evidence from unnecessarily suggestive lineups is a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983.

In *Cerbone v. County of Westchester*, 508 F.Supp. 780 (S.D.N.Y.1981), the court dismissed a plaintiff's complaint under 42 U.S.C. § 1983 based on allegations analogous to the present case. In *Cerbone*, the plaintiff maintained that a village police department was liable under § 1983 since its officers subjected him to a "show-up" [3] which had been unduly suggestive. The court stated:

> "Cerbone [plaintiff] does not allege that the evidence from the 'show-up' itself was introduced at his trial or that any harm resulted from it. The mere failure of a 'show-up' to pass constitutional requirements, without a showing of resulting prejudice, does not establish a constitutional deprivation. The constitutional guarantee against a pretrial confrontation 'that is unnecessarily suggestive and conducive to irreparable mistaken identification' does not exist *in vacuo* but is meaningful only by reference to the right of an accused to a fair trial, of which it is a corollary. No violation of the due process clause occurs unless an improper identification has some prejudicial impact on an accused's defense."

*Id.* at 786. Similarly, in *Pyles v. Keane*, 418 F.Supp. 269 (S.D.N.Y.1976), the court also dismissed a complaint based on § 1983 in which the plaintiffs maintained that their constitutional rights were violated simply because they were subjected to an unduly suggestive show-up. The court held that the plaintiffs failed to state a claim under § 1983 since they could not show that any witness who attended the unduly suggestive show-up ever testified at a criminal trial which resulted in the plaintiffs' convictions. The court stated:

> "The present complaint neither states nor suggests that plaintiffs suffered convictions after a trial or trials at which the tainted 'show-up' evidence was admitted against them. Nor apparently could it truthfully so state; as previously noted, it is undisputed that Charles and Walter Pyles were tried only on unrelated charges, without testimony of witnesses who had attended the allegedly suggestive 'show-up.' As discussed above, this is fatal to plaintiffs' claims."

*Id.* at 275. In both *Cerbone* and *Pyles*, the court emphasized that the Constitution guarantees the right to a fair trial and that procedural rules prohibiting the introduction of evidence derived from unduly suggestive lineups exist only to protect an accused's right to a fair trial. *Cerbone*, 508 F.Supp. at 786; *Pyles*, 418 F.Supp. at 275. In the present case, Hensley has no claim under § 1983 arising out of his participation in an unduly suggestive lineup since he was not deprived of his right to a fair trial. He could not possibly have been deprived of his right to a fair trial since he was never tried.

■ To support its decision that a defendant does not have a right to an impartial lineup in itself, the district court analogized to a set of cases in which criminal defendants brought § 1983 actions against police officers alleging that the officers were liable under § 1983 for failing to properly give the defendants *Miranda* warnings. The district court stated that

---

**3.** A "show-up" differs from a "lineup" in that only one individual is exhibited to a witness and that witness is asked whether he or she can identify that individual as the perpetrator of

whatever crime is being investigated. *See Kirby v. Illinois*, 406 U.S. 682, 684–85, 92 S.Ct. 1877, 1879–80, 32 L.Ed.2d 411 (1972).

"[a]lthough it appears that no court has yet passed on whether police officers may be liable under § 1983 for conducting an improper lineup, the rejection of such a cause of action would be consistent with decisions holding that police officers are not liable under § 1983 for their failure to give *Miranda* warnings." 633 F.Supp. at 1253. In *Bennett v. Passic*, 545 F.2d 1260 (10th Cir.1976), the Tenth Circuit stated:

"The Constitution and laws of the United States do not guarantee [plaintiff] the right to *Miranda* warnings. They only guarantee him the right to be free from self-incrimination. The *Miranda* decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights be excluded from evidence. No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act [§ 1983]."

*Id.* at 1263. Applying the same logic that the Tenth Circuit used in *Bennett* here, we find that *Stovall* and *Brathwaite* establish procedural safeguards to insure that only reliable identification evidence is admitted at trial. *Stovall* and *Brathwaite* do not establish a right to an impartial lineup as long as the evidence gained through that lineup is not used at trial. Thus, the defendants could not have violated Hensley's constitutional rights simply by subjecting him to a lineup which was allegedly unduly suggestive.[4]

■ Furthermore, we also note that the lineup at issue in the present case was not unduly suggestive. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967 (1967). *See also United States ex rel. Kirby v. Sturges*, 510 F.2d 397 (7th Cir.1975). The participants in the lineup 1) wore similar clothing (T-shirts and trousers); 2) were of approximately the same height and weight; 3) were all white males approximately 20 years of age. Pufpaf had reported to police that she had seen the attacker and gave a description to the police which might very easily have fit any of the participants. The only feature that distinguished the defendant was his short hair. In addition, another witness, Vandenberg, identified Hensley as Pufpaf's attacker thus adding validity to Pufpaf's original identification and description. As the Wisconsin Supreme Court has stated:

"The 'totality of the circumstances' reference is a reminder that there can be an infinite variety of differing situations involved in the conduct of a particular lineup. The police authorities are required to make every effort reasonable under the circumstances to conduct a fair and balanced presentation of alternative possibilities for identification. The police are not required to conduct a search for identical twins in age, height, weight or facial features. If an Eskimo were to be involved in a burglary in Vernon county, it is not to be expected that the sheriff will seek to locate or send to the Arctic for tribesmen who could pass as brothers. What is required is the attempt to conduct a fair lineup, taking all steps reasonable under the 'totality of the circumstances' to secure such result."

*Wright v. State*, 46 Wis.2d 75, 86, 175 N.W.2d 646, 652 (1970). While it is unfortunate that Hensley was subjected to confinement for 111 days due to Pufpaf's erroneous identification, from a review of the record we will not say that the lineup was

---

**4.** At oral argument, counsel for Hensley cited *Kerr v. City of Chicago*, 424 F.2d 1134 (7th Cir.1970), to support his contention that Hensley's claim was cognizable under § 1983. In *Kerr*, the plaintiff maintained that Chicago police obtained an involuntary confession and used it to illegally detain him for 18 months. This court held that a complaint alleging that police used coercion to extract an involuntary confession stated a claim under § 1983. That case is distinguishable from the present case since in *Kerr* the plaintiff alleged that the police used physical force to extract an involuntary confession. Historically, courts have recognized that this use of force to extract an involuntary confession is actionable under § 1983 while a mere technical failure to follow court established rules of criminal procedure is not cognizable under § 1983. *See Duncan v. Nelson*, 466 F.2d 939, 944 (7th Cir.1972).

improperly conducted. We affirm the district court's grant of summary judgment.