Maceo G. WILLIS, Jr., Plaintiff,

v.

Ernest BELL, et al., Defendants.

No. 86 C 9589.

United States District Court, N.D. Illinois, E.D.

May 27, 1988.

Robert O. Case, Whitman H. Brisky, Jeffrey E. Schiller, Robert S. Hirschhorn, Walsh, Case, Coale & Brown, Chicago, Ill., for plaintiff.

Diane J. Larsen, Taryn Springs, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Maceo Willis ("Willis") has sued several City of Chicago ("City") police officers (collectively "Officers"),[1] former Chicago Police Department Superintendent Fred Rice ("Rice") and City itself under 42 U.S.C. § 1983 ("Section 1983"), claiming numerous violations of Willis' constitutional rights incident to his arrest and detention by Officers from February 11 to 13, 1985.[2] All defendants have now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56, asserting there are no disputed material facts and they are entitled to a judgment as a matter of law. For the reasons stated in this memorandum opinion and order:

1. Several of Willis' claims are dismissed for lack of subject matter jurisdiction.

2. Judgment for Officers is granted on Willis' probable-cause-for-arrest claim.

3. Defendants' motion is denied as to Willis' claims against Officers, Rice and City based on the length and conditions of his detention.

### Controlling Evidentiary Standards

■ Rule 56 principles impose on the party seeking summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Where defendants are the Rule 56 movants, they may meet that burden by pointing to plaintiff's failure to adduce evidence to support his claim, in which case plaintiff may not rest on his pleadings but must proffer evidence in the form allowed by Rule 56 (*id.* at 324, 106 S.Ct. at 2553–54).

D.R.Mem. 2 asserts defendants are entitled to summary judgment because Willis has not reduced the factual allegations of the Complaint to evidentiary form. While it would have been better as a purely technical matter for Willis to have done so, his failure to do so under the circumstances involved is not fatal.

Nothing in defendants' motion, their Statement of Undisputed Material Facts submitted pursuant to Local Rule 12(e) ("Rule 12(e) Statement") or their supporting memorandum could have put Willis on notice that defendants challenged his ability to provide the factual basis for his claim. What defendants advanced instead were legal arguments, contending the facts as alleged in the Complaint failed to state a claim for which relief could be granted because of (1) the outcome of suppression hearings in Willis' criminal case and (2) the pending appeal of his conviction.

Thus while defendants properly brought their motion under the Rule 56 rubric (because it necessarily relies on matters outside the pleadings), the motion really

---

1. Defendant Officers are Ernest Bell ("Bell"), Leonard Kukulka ("Kukulka"), A. Jones, Jr. ("Jones") and T. O'Connor ("O'Connor"). Willis' Third Amended Complaint (the "Complaint") identifies Kukulka as "Leonard Kukula" throughout. Because defendants' answer and memoranda consistently spell his name with three "ks," this opinion adheres to that spelling.

2. Initially the Complaint also included a pendent state law claim for alleged violations of the Illinois Code of Criminal Procedure, Ill.Rev. Stat. ch. 38, ¶¶ 100–1 to 126–1. In an earlier opinion (669 F.Supp. 229, 231–34 (N.D.Ill.1987)) this Court declined to exercise pendent jurisdiction over the Illinois claim because Illinois law was unsettled.

sounds in Rule 12(b)(6) with those added facts adduced. For example, most headings in defendants' memoranda say the Complaint "fails to state a claim." Similarly, defendants' Rule 12(e) Statement contains only three "undisputed facts" that defendants say entitle them to judgment:

1. Willis was convicted.

2. His motion to suppress the lineup identifications was denied.

3. His motion to quash his arrest was also denied.

P.Mem. 1–2 notes the nature of defendants' arguments, and the memorandum then proceeds as though responding to a motion to dismiss, dealing with each of defendants' contentions in those terms. In this special situation Willis should not be penalized for failing to reduce his Complaint to affidavit form.

Accordingly the following factual description mirrors the Complaint's allegations. Though it therefore recites matters that may be considered disputed, under Rule 56 this Court must credit Willis' version of disputed facts, and this opinion does so.

## Factual Background

At about 9 a.m. February 11, 1985, Bell, Kukulka, Jones and O'Connor detained Willis at his place of employment. They:

1. refused to allow Willis to communicate with his fiancee or an attorney;

2. ignored his request to see an arrest warrant;

3. handcuffed him and escorted him forcibly to the waiting police car; and

4. failed to read him his rights until shortly before he arrived at the police station.

Willis was held continuously in police custody until he was arraigned February 13. During that period Officers:

1. again denied Willis the right to communicate with his fiancee or an attorney for a period extending in excess of 12 hours;

2. failed to provide him with an attorney during that period;

3. questioned him repeatedly throughout the period without an attorney being present;

4. forced him to take part in a police lineup procedure without an attorney being present;

5. refused his repeated requests for food (he was given no food whatever for over 24 hours after his detention) and denied him the opportunity to use the bathroom for extended periods of time;

6. refused to advise him of the charges against him until after questioning him for an extended period of time and placing him in the lineup procedure;

7. moved him repeatedly from police station to police station throughout the night before finally incarcerating him in the Cook County Jail on February 12, 1985, thus preventing his parents from seeing him and causing them to go from police station to police station looking for their son; and

8. failed to arraign him until February 13, over two days after he had first been detained.

Count I charges the Officers with violating Willis' rights:

1. to be free from detention without warrant or charge,

2. to have an attorney present during questioning and

3. to be treated humanely while detained.

Count II charges Rice and City with violating Willis' constitutional rights through an alleged City policy of extended detention of suspects without an appearance before a magistrate.

## Defendants' Positions

Because Willis' claims differ in nature as to the various defendants, defendants advance substantially different arguments. As for Officers, they propound three reasons to grant them summary judgment:

1. Willis' claims really go to the fairness of his trial, rather than to constitutional deprivations unrelated to his ultimate conviction. Given that, Officers say the claims can be raised only in a habeas corpus proceeding, which would

be premature because he has not exhausted state remedies.

2. Willis' allegations fail to state claims for violations of the Fifth or Sixth Amendments.[3]

3. Willis is collaterally estopped from raising his Sixth and Fourteenth Amendment claims by the adverse outcome of the suppression hearings in his criminal trial.

On their part, Rice and City say they are entitled to summary judgment on the detention claim because the denial of his motion to quash his arrest for lack of probable cause precludes Willis from showing he was harmed by any constitutional violation that might have occurred.[4] This opinion treats with the several contentions in turn.

### Section 1983 or Habeas Corpus?

If Willis were challenging the fact or duration of his imprisonment as such, the proper vehicle for federal relief would be a 28 U.S.C. § 2254 ("Section 2254") petition (*Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). That habeas corpus route is now unavailable to him because his conviction is still on direct appeal in state court. But Willis says he does not seek to challenge his confinement. Instead he seeks only damages for constitutional deprivations.

While there is language in *Wolff v. McDonnell*, 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935 (1974) strongly suggesting that a claim for damages can avoid the obstacle posed by *Preiser*, our Court of Appeals has consistently held that when the "core" of a plaintiff's claim "concerns the fact or duration of his

confinement, and any award of damages would be entirely dependent upon the favorable resolution of that issue," plaintiff must fulfill the exhaustion-of-state-remedies requirements of habeas corpus (*Crump v. Lane*, 807 F.2d 1394, 1401 (7th Cir.1986); *Hanson v. Heckel*, 791 F.2d 93, 95–96 (7th Cir.1986) (per curiam)).

Each of *Crump* and *Hanson* involved a claimed constitutional deprivation in a state proceeding to determine the release date of a properly convicted prisoner, rather than a deprivation in the proceedings leading to his conviction. That distinction is irrelevant, because both types of deprivation go to the "fact or duration of confinement." Hence other Courts of Appeals have used reasoning similar to that in *Crump* and *Hanson* to find that charges of violations in the process leading to conviction also sound in habeas corpus and require exhaustion of state remedies (*Hernandez v. Spencer*, 780 F.2d 504, 505 (5th Cir.1986); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 682 (9th Cir. 1984); *contra, Harper v. Jeffries*, 808 F.2d 281, 283–84 (3d Cir.1986)).

That being so, the issue is whether Willis' claims at their "core" go to the validity of his conviction—and thus the fact of his confinement—and are therefore assertable in habeas corpus. There is little question that most (though not all) of Willis' claims fit that description. They may be discussed briefly in turn.

### 1. Right to Counsel

By its terms the Sixth Amendment itself says "the accused shall enjoy the right ...

---

**3.** Of course neither the Fifth nor the Sixth Amendment is directed against state actors. Willis' Section 1983 claims actually derive from asserted violations of the Fourteenth Amendment's Due Process Clause, which has been read as incorporating those Bill of Rights provisions. This opinion adheres to the universal and useful (albeit technically imprecise) usage of referring to each Bill of Rights provision directly, rather than to the Fourteenth Amendment. That commonplace observation renders irrelevant one argument made by defendants. D.Mem. 6 says Willis has not stated any Fifth Amendment violation because defendants are not federal actors. That is a non sequitur as long as the relevant clause of the Fifth Amendment has been applied

to the states, and of course it has been (*Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)).

**4.** Rice and City make two other arguments that deserve only short shrift. First they say Willis has alleged no causal link between City's detention policy and his detention. Next they say Willis has not alleged his probable cause hearing was unreasonably delayed. Neither contention is remotely supported by a reading of the Complaint, and nothing in defendants' submissions suggests that it is undisputed that no factual basis exists for the claims.

to have the Assistance of Counsel *for his defence*" (emphasis added). *United States v. Gouveia*, 467 U.S. 180, 188–89, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984) (quoting *United States v. Ash*, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973)) teaches:

> We have recognized that the "core purpose" of the counsel guarantee is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor."

Even in circumstances such as here, where the right to counsel is asserted to have been violated well before trial, the Court has found the right to attach only (*Gouveia*, 467 U.S. at 189, 104 S.Ct. at 2298, quoting *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed. 2d 1149 (1967)):

> in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality."

At its core, then, Willis' claim that he was deprived of his Sixth Amendment right to counsel when police refused his requests to telephone an attorney and when they conducted several lineups without an attorney present does go to the validity of his conviction. Thus the claim draws from the same fount as a habeas corpus claim, and the nonexhaustion of state remedies bars it.

## 2. Fifth Amendment

■ As *Michigan v. Jackson*, 475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631 (1986) notes:

> The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations.

Thus the Fifth Amendment (see n. 3) may provide an independent basis for Willis' deprivation-of-counsel claim. Yet the Fifth Amendment is violated not by the compulsion of self-incriminating statements as such, nor by the failure to give *Miranda* warnings when they are required, but by the later use of information thus obtained to obtain a conviction (see generally *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); see also *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir.1976), quoted with approval in *Hensley v. Carey*, 818 F.2d 646, 650 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987)). Willis can therefore make out a Fifth Amendment violation only as it may have tainted his conviction. And he may not present such a challenge to his conviction in federal court without first exhausting his state remedies.

## 3. Due Process (Suggestive Lineup)

■ This is certainly the easiest of Willis' claims to dispose of on exhaustion grounds. Obviously an unduly suggestive lineup does not independently deprive the defendant of liberty without due process (at least when he is already in custody). It is rather the use of tainted identifications at trial that violates due process (*Hensley*, 818 F.2d at 649–50). This claim too is premature in federal terms.

## 4. Other Due Process Claims

■ Willis' other claims against Officers stand on a different footing. Potential violations of the Fourth Amendment right not to be arrested or detained without a warrant or probable cause, the Fourth Amendment right to a prompt judicial determination of probable cause [5] and the due process right not to be detained under conditions constituting punishment without a prior adjudication of guilt in no way affect the balance between state and defendant at trial. At their core, violations of those

---

**5.** D.R.Mem. 7–8 asserts Willis' Fourth Amendment claims are not properly before this Court because they were raised for the first time in the responsive memorandum to defendants' motion. That is simply mistaken. Legal theories of recovery are not an essential part of federal pleadings. Here the Complaint properly sets out facts that arguably implicate the Fourth Amendment, and Complaint ¶ 11 refers to deprivations of Willis' "freedom from unlawful detention without warrant or charge." That is surely enough to put defendants on notice of the general nature of Willis' claims. Defendants' silence on the Fourth Amendment in their opening brief can hardly bar Willis from explaining the grounds of his claim in the reply brief.

rights do not challenge the validity of Willis' conviction. Thus, for example, *Hernandez,* 780 F.2d at 505–06 allowed a Section 1983 claim for damages "for the use of unreasonable force in connection with and following ... arrest" to proceed without exhaustion of state proceedings, even while dismissing other claims that did go to the adjudication of guilt.

\* \* \* \* \* \*

■ In summary, because the core issues on Willis' Fifth Amendment, Sixth Amendment and lineup claims sound in habeas corpus, and because Willis has not satisfied the exhaustion requirements for such claims, they are dismissed. One fundamental purpose—indeed the principal purpose—of the exhaustion doctrine is to allow state courts the first opportunity to correct any errors in the areas involved. For that reason this opinion will not treat with the alternative arguments defendants advance as to the merits of the nonexhausted claims.

This silence should be understood as just that—not as any reflection on the merit or lack of merit of Willis' assertions. Willis' conviction is on appeal in the state courts, and they will have the first say in the matter.

As already indicated, Willis' Fourth Amendment and conditions-of-detention claims do survive the exhaustion inquiry. They must, however, dodge another bullet, and this opinion now turns to that topic.

### Issue Preclusion

■ In addition, the Officers say Willis is collaterally estopped from asserting any post-arrest detention claim by the state court's denial of his motion to quash his arrest. Their argument is not well developed, and it seems to ignore the threefold nature of Willis' claims—conceptually distinct assertions of:

1. his arrest and detention without probable cause;

2. his extended detention without a probable cause hearing; and

3. his detention under unconstitutional conditions.

As for the second and third of those contentions, Officers' argument is wholly misplaced. Judge Sklodowski's state court denial of Willis' motion to quash cannot be said to have ruled on either the length or the conditions of his detention.

However, Officers' first contention—that as to Willis' arrest-without-probable-cause claim—is clearly right. *Allen v. McCurry,* 449 U.S. 90, 96–105, 101 S.Ct. 411, 415–21, 66 L.Ed.2d 308 (1980) confirmed the applicability of the common-law doctrine of issue preclusion to Section 1983 actions. Four requirements must be met for that purpose (*Bailey v. Andrews,* 811 F.2d 366, 369 (7th Cir.1987)):

The issue must be the same as that involved in the prior judicial proceeding; the issue must actually have been litigated; the issue must have been resolved; and the issue's determination must have been necessary to the judgment in the prior proceeding.

In this instance, Willis moved to quash his arrest for lack of probable cause in his state court criminal proceedings. At the hearing Judge Sklodowski heard evidence as to the existence of probable cause at the time of the arrest (Tr. at 58–61), and Willis' counsel argued probable cause was lacking (*id.* at 67–70). Judge Sklodowski denied the motion. Each of the requirements for issue preclusion is present.[6]

---

**6.** Willis urges *de La Paz v. Danzl,* 646 F.Supp. 914, 918–19 (N.D.Ill.1986) points in the other direction. There this Court found no issue preclusion in the results of a state court suppression hearing. Each of four independent factors led to that conclusion:

1. It was unclear whether de La Paz' excessive force claim had actually been litigated.

2. In reaching its decision, the state court had focused on the issue of causation rather than whether the force used was excessive.

3. de La Paz' motion was granted on other grounds, so the state court's comments were dicta.

4. Because de La Paz had won the motion, he had no way to appeal the rejection of his alternate ground (and no incentive to seek reconsideration by the trial judge).

By contrast, Willis' motion to quash his arrest raised one and only one issue, and it was unambiguously decided against him. None of the

## Count II

Count II charges Rice and City with (1) maintaining a policy of extended detention of arrestees before bringing them before a magistrate and (2) subjecting Willis to extended detention pursuant to that policy.[7] Rice and City say Willis can prove no damages from the delay in taking him before a judge, because the judge later found probable cause.

In effect defendants say the outcome (Willis' detention) would have been the same had Willis been afforded an earlier hearing, so "no harm, no foul." As a theoretical matter, that position has merit (cf. *Donald v. Polk County*, 836 F.2d 376, 380–81 (7th Cir.1988) (delay in holding hearing causes no harm when timely hearing would have led to same result)). Defendants' problem lies in the inapplicability of that concept to this case.

Judge Sklodowski's ruling on Willis' motion to quash his arrest (the only state court determination defendants point to) decided Officers had probable cause to *arrest* Willis, not that there was probable cause to *detain* him post-arrest. Those issues are distinct (see *Patton v. Przybylski*, 822 F.2d 697, 700–01 (7th Cir.1987)). Even where the Fourth Amendment requirement of probable cause is satisfied (*Bergren v. City of Milwaukee*, 811 F.2d 1139, 1143 (7th Cir.1987), quoting *Schall v. Martin*, 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984)):

> [t]he right to arrest a suspect does not, of course, give the state the right to hold him for any length of time or under any conditions. "It is axiomatic that [d]ue process requires that a pretrial detainee not be punished."

Because the length of detention before being brought before a magistrate can itself violate due process, and because Judge Sklodowski made no determination on whether there was probable cause to detain Willis, the claim is not foreclosed by the state criminal proceedings.

## Conclusion

Willis' claims against Officers grounded in the Sixth Amendment right to counsel, the Fifth Amendment right against self-incrimination and the due process right not to be subjected to suggestive identification procedures all sound in habeas corpus—and Willis has not satisfied the exhaustion-of-state-remedies requirement as to those claims. They are therefore dismissed for lack of subject matter jurisdiction.[8]

In addition, Officers have shown the state court determination precludes Willis from relitigating whether there was probable cause for his arrest. That claim is dismissed with prejudice (subject to its reassertion if that determination is reversed on Willis' criminal appeal).

None of the defendants has succeeded in showing the absence of disputed material factual issues on Willis' claims challenging the length and condition of his detention before he received a hearing. Those claims survive against Officers, Rice and City. There will be a status hearing at 9 a.m. June 14, 1988 to discuss the procedure for bringing those claims to trial.

---

grounds for denying issue preclusion identified in *de La Paz* is present here.

**7.** Count II also incorporates most of the factual allegations of Count I. That being so, an overly-generous reading of the Complaint might also consider Rice and City as being charged with deprivations related to the conditions of confinement and Willis' other claims. But unlike the allegations as to the extended-detention claim, nothing in the Complaint purports to tie Rice personally to those claims, or to allege a municipal policy or custom that would subject City to liability. Not surprisingly, the parties have treated Count II as raising only an extend-

ed-detention claim, and this opinion will do the same.

**8.** Although those claims and the one described in the next paragraph in the text have not survived the present motion, it was surely not for lack of effort on the part of Willis' counsel, appointed by this Court from the trial bar of this District Court to represent Willis pro bono publico. Special thanks are due Messrs. Robert O. Case, Whitman H. Brisky, Jeffrey E. Schiller and Robert S. Hirschhorn, whose representation of Willis has advanced substantial legal arguments and presented them in the best traditions of the profession.