**Larry Dean SEJNOHA, Plaintiff,**

*v.*

**The CITY OF BISBEE; the Bisbee Police Department; J.E. Holly, individually and as an officer of the Bisbee Police Dept., Defendants.**

No. CIV 92–482 TUC RMB.

United States District Court, D. Arizona.

Feb. 25, 1993.

Clague A. Van Slyke, III, Tucson, AZ, for plaintiff.

Daryl Audilett and Anna Torriente, Kimble, Gothreau & Nelson, P.C., Tucson, AZ, for defendants.

### ORDER

BILBY, District Judge.

Pursuant to 42 U.S.C. § 1983, Sejnoha sought damages from the City of Bisbee, the Bisbee Police Department and J.E. Holly, a Bisbee police officer, for alleged violations of his fourth, fifth, and fourteenth amendment rights, which occurred incident to a photo lineup that purportedly was "unduly suggestive and impermissibly tainted."

Sejnoha also alleged that Holly was grossly negligent, deviated from the standard of care exercised by a reasonable police officer, and committed the torts of false arrest and wrongful imprisonment.

Before the court is the defendants' motion for summary judgment. They contend that Sejnoha has no cognizable cause of action under 42 U.S.C. § 1983, that probable cause existed to support the search of the plaintiff's residence and his subsequent arrest, and that the state law claims must be dismissed as a matter of law.

The court finds that there are no genuine issues of material fact. The defendants are entitled to judgment as a matter of law.

### I. FACTS

On June 21, 1991, the Pizza House Restaurant in Bisbee, Arizona was robbed at gunpoint by two men. The owner of the restaurant, who was a former police officer trained in investigative/detective work, and his son/employee gave a description of the robbers to the investigating officers, one of whom was J.E. Holly.

The victims described each of the robbers in detail. Each was described as 5′4″ to 5′6″, 130 to 135 pounds, "possibly oriental" and having a non-Hispanic accent. Suspect number 1 was further described as "carrying a full-length shotgun with some type of strap tied to it. Suspect was carrying the weapon in his left hand. Suspect was wearing a dark shirt, green camouflage pants and military-type boots." The victims indicated that they believed they could positively identify Suspect No. 1.

A composite drawing of Suspect No. 1 was produced with the help of the victims.

On June 22, 1991, a fellow police officer informed Holly that a person matching the description of Suspect No. 1 had been seen in Bisbee. This person was identified as the plaintiff.

On June 27, 1991, a copy of the plaintiff's driver's license was obtained.

On July 3, 1991, Holly compared the photograph on the plaintiff's driver's license with the composite drawing. It was Holly's opinion that the photograph and the drawing matched.

Holly prepared a photo lineup of five individuals including the plaintiff. All photos in

the lineup were from drivers' licenses. All persons in the lineup had dark hair, dark eyes, olive skin, and a moustache. Sejnoha was the only oriental person in the lineup.

Holly showed the lineup to the Bisbee Police Department Chief and to the Cochise County Attorney and obtained their approval before showing it to the robbery victims.

The lineup was shown to each of the victims. Each positively identified the plaintiff.

On July 10, 1991, Holly prepared a search warrant affidavit for the plaintiff's residence and vehicle. A search warrant and an arrest warrant were issued on July 11, 1991. Each was signed by a City Magistrate who found probable cause for both warrants to issue.

During the search of Sejnoha's residence, Holly found a shotgun like the one that had been used in the robbery. In addition, Holly found other items that he believed matched the descriptions provided by the victims.

Following this search, Holly waited for Sejnoha to return to his residence. When he returned, Holly served the arrest warrant on Sejnoha and took him into custody.

Sejnoha is 5'0" tall and weighs approximately 110 pounds.

Sejnoha was incarcerated for 22 days. After he took and passed a polygraph examination, the Deputy County Attorney dismissed the charges against Sejnoha.

## II. ANALYSIS

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Whether a fact is material depends on the substantive law at issue. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The question to be answered is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,* at 251–252. The initial burden is on the moving party to show that there is no genuine issue of material fact. Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552, 2553, 91 L.Ed.2d 265 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Hopkins v. Andaya,* 958 F.2d 881 (9th Cir.1992). The court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2511. The court must, therefore, examine the facts to determine whether they are material, and assess the inferences that might be reasonably drawn from them.

### B. Standard for Stating a Claim Under 42 U.S.C. § 1983

To state a section 1983 claim, the plaintiff must allege facts that show a deprivation of a right, privilege or immunity secured by the constitution by a person acting under the color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

#### 1) The Photographic Lineup

The court finds that the photographic lineup was not unduly suggestive.

Whether a lineup is unduly suggestive depends upon the totality of the circumstances. *Stovall v. Denno,* 388 U.S. 293, 302,

87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Police authorities are required to make every reasonable effort under the circumstances to conduct a fair and balanced presentation of alternative possibilities for identification but they are "not required to conduct a search for identical twins in age, height, weight or facial features." *Hensley v. Carey*, 818 F.2d 646, 650 (1987) *cert. denied* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987).

■ In this case, all photos used in the lineup were obtained from drivers' licenses and all were in black and white. The persons pictured had the similarities identified above. Although Sejnoha was the only oriental person in the lineup, the court found that the person in picture number one had facial characteristics in common with Sejnoha (picture number five), that the person in picture number two had eyes that suggested an oriental appearance, and that Sejnoha had facial characteristics similar to those of persons from Mexico.

■ The court also finds that even if the photographic lineup was unduly suggestive, Sejnoha has no cause of action under 42 U.S.C. § 1983 because there is no constitutional right to a photographic lineup that is not unduly suggestive.

"... a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest." *Manson v. Brathwaite*, 432 U.S. 98, 113, n. 13, 97 S.Ct. 2243, 2252 n. 13, 53 L.Ed.2d 140 (1977). The rule against unduly suggestive lineups is a procedural safeguard. It is used to protect the constitutional right to a fair trial. Sejnoha did not assert a violation of his right to a fair trial. Nor did he assert facts that shock the conscience, indicating that his substantive due process right was violated.

The Court of Appeals for the Seventh Circuit ruled on the issue before this court. In *Hensley, supra*, a case of first impression, the court held that the plaintiff had no § 1983 cause of action for any harm resulting

from being wrongly incarcerated for 111 days.[1] In *Hensley*, the plaintiff was arrested after the victim identified him in a lineup. The victim later withdrew her identification indicating that she chose the plaintiff because he was the only person in the lineup with a military style haircut.

The *Hensley* court studied Supreme Court decisions dealing with the admission of evidence derived from an unnecessarily suggestive lineup or confrontation with a witness. It indicated that the Supreme Court holdings established procedural safeguards that protect only against the admission of unreliable evidence at trial and do not establish a constitutional right to be free of suggestive lineups. *Id.*, at 648. These safeguards protect a core right, the right to a fair trial. "[I]t is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983." *Id.*, at 649.

In this case, as in *Hensley*, Sejnoha could not possibly have been deprived of his right to a fair trial because he was never tried. The evidence obtained through use of the photo lineup was never used against Sejnoha.

The plaintiff argued that the recent decision of the Court of Appeals for the Ninth Circuit in *Cooper v. Dupnick*, 963 F.2d 1220 (9th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992), as applied in *Haupt v. Las Vegas Metropolitan Police Dept.*, 794 F.Supp. 1480 (N.D.Nev.1992), led to a different result. He read those decisions as holding that the existence of extraordinary circumstances surrounding the violation of a procedural safeguard can support a § 1983 claim.

■ Assuming, *arguendo*, that the plaintiff read those cases correctly, he failed to establish that extraordinary circumstances exist. The extraordinary circumstances to which those cases refer are the use of coercion or force or other police misconduct. Sejnoha made no allegation of the use of coercion or

---

1. The court supported its decision by drawing an analogy to cases in which criminal defendants brought § 1983 actions against police officers for failing to give *Miranda* warnings properly.

District court cases reaching the same conclusion include: *Mack v. Butler*, 742 F.Supp. 1007 (N.D.Ill.1990); *Willis v. Bell*, 687 F.Supp. 380 (N.D.Ill.1988); *Gonzalez v. Tilmer*, 775 F.Supp. 256 (N.D.Ill.1981); *Cerbone v. County of Westchester*, 508 F.Supp. 780 (S.D.N.Y.1981); *Pyles v. Keane*, 418 F.Supp. 269 (S.D.N.Y.1976).

force. He described no police misconduct surrounding the photo lineup that shocks the conscience.[2]

### 2) Probable Cause for the Search and Arrest Warrants

 Having found that the photographic lineup was not unduly suggestive, the court finds that there was probable cause for the search and arrest warrants. Probable cause exists if there is "some objective evidence which would allow a reasonable officer to deduce that a particular individual has committed or is in the process of committing a criminal offense." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984).

There being no genuine issues of material fact,

IT IS ORDERED that the defendants' motion for summary judgment is GRANTED. Judgment is entered for the defendants and against the plaintiff.

IT IS FURTHER ORDERED that the pendent state law claims are DISMISSED WITHOUT PREJUDICE.

---

**2.** Police misconduct that shocks the conscience has included "unlawfully breaking into and entering defendant's room, unlawfully assaulting, battering, torturing and falsely imprisoning the defendant...." *Rochin v. People of Cal.*, 342 U.S. 165, 167, 72 S.Ct. 205, 96 L.Ed. 183 (1952);

"the ... unlawful plot to deprive an accused suspect of the privilege of testifying in his own defense finds no support whatsoever in the settled law." *Cooper v. Dupnik*, 963 F.2d 1220, 1250 (9th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992).