**Edward BRODNICKI, Plaintiff,**

v.

**CITY OF OMAHA, NEBRASKA, a municipal corporation; Patrick A. McCaslin, Kevin Donlan, Jeffery J. Theulen, John Skanes, John Swanson and Michael Hoch, Defendants.**

No. 8:CV93–00098.

United States District Court,
D. Nebraska.

Jan. 25, 1995.

Lawrence G. Whelan, Omaha, NE, for plaintiff.

James E. Fellows, Thomas O. Mumgaard, Mary M. Elliston, Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

STROM, Chief Judge.

This matter is before the Court on defendants Patrick A. McCaslin, Kevin Donlan, Jeffery J. Theulen, John Skanes, John Swanson, and Michael Hoch's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) (Filing No. 45). For the following reasons, defendants' motion should be granted.

## BACKGROUND

The material facts of this case are undisputed.[1] On March 17, 1992, at approximately 5:20 p.m., Omaha Police Department Officers

---

1. The facts pertinent to this motion are largely identical to those contained in the Court's Memorandum Opinion entered July 7, 1994 (Filing No. 41) which dismissed the plaintiff's complaint against James Jansen and Douglas County.

Patrick A. McCaslin and Jeffery J. Theulen were dispatched to an Omaha address to interview nine-year-old Meaghan Callaghan regarding her report of an abduction attempt against her. She told the officers that approximately fifteen (15) minutes earlier, while she was on her way home after playing with friends, she was approached by a man near 45th and Hickory Streets who had dirty blonde hair, a moustache, wore sunglasses, a black hat and a black shirt, and drove a white vehicle with license plate number 1–AA864. She stated that the man opened the car window and said "Your mother's going to be late at work and she told me to pick you up." Callaghan refused to get into the car but the man followed her for approximately two blocks repeating his request for her to get into his car.

The license plate number reported by Callaghan was quickly traced to the registered owner of a white Volkswagen, Edward Brodnicki, who lived at 4420 Walnut Street. While the other officers were at the Callaghans', Omaha Police Officer Kevin Donlan arrived at Brodnicki's home and examined the car bearing the reported license plate number. Brodnicki saw Donlan inspecting his car and asked for an explanation, but Donlan refused to comment and told Brodnicki to stay inside his home.

Minutes later McCaslin arrived at Brodnicki's and also examined the car. McCaslin later testified at Brodnicki's preliminary hearing that the engine felt cool. McCaslin left Brodnicki's and later returned in a police cruiser with Callaghan and her father.

While seated in the police cruiser parked in front of Brodnicki's home, Callaghan immediately identified Brodnicki's car as the vehicle that followed her. At the same time, Donlan and McCaslin had Brodnicki stand in his front yard while Callaghan "took a look at him" from the cruiser (Plf's Exh. 10, p. 5, McCaslin's Police Report). Theulen advised McCaslin that Callaghan made a positive identification of Brodnicki as the man driving the car that followed her. Callaghan also identified a pair of sunglasses hanging on the

rearview mirror of the Volkswagen as the same pair worn by Brodnicki. McCaslin and Donlan obtained permission from Brodnicki to search his automobile wherein they seized the sunglasses, a yellow baseball hat and a gray stocking cap which were located on the passenger seat of the car.

Brodnicki was taken to Central Police Headquarters and interrogated by Officer John Swanson. During the interrogation sessions, Brodnicki told Swanson that he was an archeologist for the Corps of Engineers and an adjunct professor for the University of Nebraska at Omaha. He explained that he arrived home at around 3:30 p.m. and was busy making dinner and grading papers during the time Callaghan claimed that he approached her. Brodnicki claims he advised Swanson that, if interviewed, his neighbors would corroborate his statement that he did not leave his home during the afternoon of March 17. None of Brodnicki's neighbors were ever contacted by law enforcement officials.

Swanson and Officer John Skanes, who had earlier interviewed Callaghan at police headquarters, concluded that her statement and the corroborating evidence provided them with sufficient evidence to charge Brodnicki for attempted kidnapping. Brodnicki was held at police headquarters for forty-four hours before his arraignment on March 19.[2]

In her testimony at the preliminary hearing, Callaghan stated that Brodnicki approached her at 45th and Walnut Streets, that he wore a green, red, and yellow shirt, had gray hair and was not certain if he had a moustache. Although this testimony contradicted her initial report to the police, Brodnicki was bound over for trial and released on bond.

On August 27, 1992, Brodnicki hired his own team of investigators and, through neighborhood interviews, established evidence that his car did not move after he arrived home from work on March 17th at 3:30 p.m. His investigators also interviewed the children with whom Callaghan was play-

2. Officer Michael Hoch did not participate in initial interrogation or arrest of Brodnicki. Plaintiff nevertheless named Hoch as a defendant, apparently because Hoch conducted a follow up investigation of Brodnicki's background on March 18, 1992.

ing the afternoon of the incident and learned that, unbeknownst to Callaghan, one child followed her on her way home. The playmate stated that Brodnicki's car was parked on the street and that she never saw the car or Brodnicki approach Callaghan as she passed. Once this information was confirmed by the County Attorney's Office, the charges against Brodnicki were dismissed on December 11, 1992.

Brodnicki now comes to this Court pursuant to 28 U.S.C. §§ 1343(a)(3), (4), and 28 U.S.C. § 1331, alleging violations of 42 U.S.C. §§ 1983, 1988, as well as various state law claims under the doctrine of "pendant" jurisdiction, now codified as "supplemental" jurisdiction under 28 U.S.C. § 1367. The thrust of Brodnicki's complaint against the police officers is that his arrest constituted a deprivation of his liberty without due process of law in violation of 42 U.S.C. § 1983, and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

## STANDARD OF REVIEW

 Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In order for the moving party to prevail, it must demonstrate to the Court that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A material issue is genuine if it has any real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, all evidence and inferences are to be viewed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. However, the nonmoving party may not rest on mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. And if plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. The Court reviews defendants' motion for summary judgment in light of the forgoing standard.

## DISCUSSION

There is no question in this case of Brodnicki's innocence. But, because "[t]he Constitution does not guarantee that only the guilty will be arrested," *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), Brodnicki's innocence is irrelevant to the question of whether there was probable cause for his arrest. *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979) (holding that the validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the subject is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest).[3]

 The issue before the Court is whether the police had probable cause to arrest Brodnicki. A warrantless arrest with-

---

**3.** This is a tragic case because the plaintiff may well have suffered irreparable injury because of Callaghan's false charges. Indeed, it appears to the Court from the evidence presented that had a minimal investigation been pursued at the beginning of this episode, evidence would have been developed that Callaghan often created imaginary threats and villains and made a habit of

reporting them to her friends and others. This leaves the Court puzzled as to why no one, including Callaghan's parents, alerted the police to Callaghan's history of making such allegations. Since the County Court found probable cause to bind the plaintiff over for trial, these concerns of the Court are not material to the resolution of the issues presented in this case.

out probable cause violates the Constitution and forms the basis for a § 1983 claim. If there was probable cause for the officers' actions, however, they cannot be held liable. *Hannah v. Overland,* 795 F.2d 1385 (8th Cir.1986). When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate. *White v. Pierce County,* 797 F.2d 812, 815 (9th Cir.1986).

The United States Supreme Court articulated the test for probable cause in *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964):

> Whether [an] arrest was constitutionally valid depends ... upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person arrested] had committed ... an offense.

*Id.* at 91, 85 S.Ct. at 225. The Supreme Court has acknowledged that it is inevitable that law enforcement officials will from time to time reasonably but mistakenly conclude that probable cause is present, but should nevertheless not be held liable. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the United States Court of Appeals for the Second Circuit has stated, "[e]vidence before the court might be insufficient to sustain a finding of probable cause for the [arrest], yet be adequate for the judge to conclude it was reasonable for [the officer] to believe he had a good basis for his actions." *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990). Probable cause does require overwhelmingly convincing evidence, but only "reasonably trustworthy information." *Beck,* 379 U.S. at 91, 85 S.Ct. at 225. Probable cause "is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." *United States v. Davis,* 458 F.2d 819, 821 (D.C.Cir.1972); *see also United*

*States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975). The Court must therefore consider the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information at the time of arrest.

■ As the Court's recitation of the facts reveals, Callaghan reported that she was approached by a man in a white car with license plate number 1–AA864, who had dirty blonde hair, a moustache, and who wore sunglasses, a black hat and a black shirt. Callaghan's description was generally consistent with the evidence found by the police: Callaghan's description of the license plate number, color and location of the car corresponded with Brodnicki's; property seized in Brodnicki's car included a pair of dark sunglasses like those described by Callaghan; and Callaghan positively identified Brodnicki during the "showup" [4] while he stood in his front yard. Indeed, the Eighth Circuit has recognized the inherent reliability of a victim-witness identification. *United States v. Easter,* 552 F.2d 230, 233–34 (8th Cir.), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977) (*see also Myers v. Morris,* 810 F.2d 1437, 1457 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987)). These undisputed facts, as well as the fact that Brodnicki did not have a corroborating alibi at the time of his arrest, convinces the Court that the police officers acted with probable cause when arresting and charging Brodnicki with the attempted kidnapping of Callaghan.

Certainly inconsistencies in Callaghan's description existed at the time of Brodnicki's arrest: Brodnicki had dark brown hair as opposed to dirty blonde; he wore a beard but no mustache; and he was dressed in a brown rather than a black shirt at the time of his arrest. However, the Court finds it reasonable that during the investigation of Callaghan's report that the officers could have concluded that the black hat may have been inside Brodnicki's home—where they did not search—and that Callaghan simply confused a black shirt for a brown one, a beard for a moustache and hair that was reportedly cov-

---

4. In a "showup," as opposed to a "lineup," a single individual is exhibited to a witness and that witness is asked whether she can identify the individual as the perpetrator of the crime being investigated.

ered by a hat as dirty blonde when Brodnicki's was actually dark brown. When these inconsistencies are considered in light of the totality of the circumstances, it is apparent that the evidence favoring probable cause considerably outweighs the evidence against it. As the Supreme Court stated in *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), "In dealing with probable cause, as the very name implies, the police deal with probabilities. These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men not legal technicians act." *Id.* at 175, 69 S.Ct. at 1310.

■ The Court recognizes that a considerable amount of plaintiff's argument against summary judgment is that the "showup" was so suggestive that it was improper to include it in the probable cause calculation. However, "the mere failure of a 'show-up' to pass constitutional requirements, without a showing of resulting prejudice, does not establish a constitutional deprivation." *Hensley v. Carey*, 818 F.2d 646, 649 (7th Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987) (*citing Cerbone v. County of Westchester*, 508 F.Supp. 780 (S.D.N.Y. 1981)); *see Warren v. Lincoln*, 864 F.2d 1436, 1442 (8th Cir.), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). No violation of the due process clause occurs unless an improper identification has some prejudicial effect on the plaintiff's Constitutional guarantees to a fair trial and the procedural rules prohibiting the introduction of evidence derived from unduly suggestive lineups. In the instant case, plaintiff has no § 1983 claim arising out of the showup for the reason that since he was not tried, he could not have been denied the right to a fair trial.

### CONCLUSION

Because the Court finds that the police officers arrested Brodnicki with probable cause, plaintiff's complaint against Officers McCaslin, Donlan, Theulen, Skanes, Swanson and Hoch should be dismissed. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is granted; plaintiff's complaint against Officers McCaslin, Donlan, Theulen, Skanes, Swanson and Hoch is dismissed.