**John E. LEMONS, Jr., Plaintiff,**

v.

**Ramona K. LEWIS, Defendant.**

**Civil Action No. 95–2507–EEO.**

United States District Court,
D. Kansas.

April 22, 1997.

John E. Lemons, Jr., Kansas City, KS, pro se.

Dale H. Close, Kansas City Police Dept., Legal Advisor's Office, Kansas City, MO, Lisa S. Morris, Kansas City Police Dept., Kansas City, MO, for Ramona K. Lewis.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on the following motions:

Plaintiff's Motion to Reconsider the Dismissal Order On Defendant Board of Commissioners and Detective Reed (Doc. # 68);

Plaintiff's Motion to Enter Court Transcript of the Trial as Evidence Prior to Entering Judgment on a Summary Judgment (Doc. # 69); and

Defendant Ramona K. Lewis' Motion for Summary Judgment (Doc. # 63).

The motions are ready for ruling. For the reasons set forth below, plaintiff's motion for reconsideration is denied. Plaintiff's motion to enter the court transcript as evidence is granted. Defendant's motion for summary judgment is granted.

### I. *Plaintiff's Motion for Reconsideration (Doc. # 68).*

▮▮▮ The decision of whether to grant or deny a motion for reconsideration is committed to the court's discretion. *See Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988) (district court's decision on motion for reconsideration is reviewed under abuse of discretion standard). It is well established that a motion for reconsideration is the opportunity for the court to correct manifest errors of law or fact and to review newly discovered evidence or to review a prior decision when there has been a change in the law. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990); *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6, 7 (N.D.Ill.1983).

Plaintiff filed his complaint on November 15, 1995, and named as a defendant the Board of Police Commissioners of Kansas City, Missouri ("the Board"). Thereafter, the Board filed a motion for judgment on the pleadings, on the grounds that the Board of Police Commissioners is not an entity capable of suing or being sued. On April 1, 1996, this court granted the Board's motion, finding that the Board is not a suable entity as a matter of law. *Lemons v. Kansas City, Missouri Bd. of Police Comm'rs. et al.,* Civ. A. No. 95–2507–EEO, 1996 WL 223912, *1 (D.Kan. April 1, 1996) (citing *Thompson v. City of Kansas City, Missouri,* Civ. A. No. 93–2446–EEO, 1994 WL 325997, *2 (D.Kan. June 7, 1994) (citing numerous cases)).

On February 24, 1997, plaintiff filed the instant motion to reconsider. Pursuant to our Local Rule 7.3, "[A] motion asking a judge ... to reconsider an order or decision made by that judge ... shall be filed within ten days after the entry of the order or decision unless the time is extended by the court." D. Kan. Rule 7.3. Plaintiff, by filing the instant motion nearly eleven months after our April 1, 1996, order, has seriously failed to comply with the time limitations clearly set forth in our Local Rule. Thus, plaintiff's motion should be denied on timeliness grounds alone.

Nevertheless, the court will consider the merits of plaintiff's motion. Plaintiff seeks reconsideration based on "the need to correct clear error or prevent manifest injustice." Plaintiff's reply brief at 1. Plaintiff does not contend that reconsideration is warranted based on an intervening change in the controlling law, or on the availability of new evidence. In support of his motion for reconsideration, plaintiff asserts that the court granted the Board's motion because plaintiff's reply was not timely received by the court, and because of plaintiff's inexperience with the proper procedures for handling a civil rights case.

Plaintiff misapprehends the basis for the court's April 1, 1996, decision. In our opinion, we specifically stated that the Board's motion for judgment on the pleadings would be granted because, as a matter of law, the Board was not a suable entity. In his motion for reconsideration, plaintiff has not challenged the validity of this legal proposition. Because plaintiff has not presented the court with any valid grounds for sustaining a motion for reconsideration as to its decision regarding the Board, such motion will be denied.

Plaintiff also seeks reconsideration of our November 22, 1996, order, wherein the court dismissed the action, without prejudice, against defendant Jeff H. Reed. On October 24, 1996, the court issued a show cause order, directing plaintiff to respond on or before November 12, 1996, showing why service of the summons and complaint had not been made upon Reed within 120 days from the filing of the complaint. Plaintiff failed to respond by November 12, 1996, and on November 22, 1996, the court dismissed Reed from this action.

Once again, plaintiff's motion for reconsideration, filed some three months after the order, is untimely, and therefore should be dismissed on this ground alone. Further-

more, plaintiff has stated no sufficient reason for this court to reconsider its November 22, 1996, order dismissing defendant Jeff Reed from the case. Plaintiff merely states:

> As to Det. Reed: when the court directed me to respond showing why service of the summons was not made upon Det. Reed within 120 days from filing of the complaint. The reason for that is Detective lawyer told me that the det. was working on another job, while she and the plaintiff was at the per-trial [sic] hearing. [A]nd I was satisfied that his commission was taken, so he could not do this to any one else again.

Plaintiff's reply brief at 2. Accordingly, plaintiff's motion for reconsideration as to Jeff Reed will be denied.

## II. Plaintiff's Motion to Enter Court Transcript of the Trial as Evidence Prior to Entering Judgment on a Summary Judgment (Doc. # 69).

Plaintiff seeks to enter into the record a trial transcript, apparently as evidentiary support for his opposition to defendant's motion for summary judgment. Defendant objects to plaintiff's motion on the grounds of untimeliness, and notes that pursuant to Local Rule 7.1(b), a party opposing a motion for summary judgment shall have twenty days to respond. Defendant filed her motion for summary judgment on January 29, 1997. Plaintiff filed a response to the motion for summary judgment on February 3, 1997, well within the twenty days. The court will view the motion at issue as a motion to supplement the summary judgment record, and will grant plaintiff leave to supplement the summary judgment record to include the trial transcript.

In the third paragraph of plaintiff's motion, it appears plaintiff may also be requesting that the court admit the trial transcript as evidence in any trial of this case. To the extent plaintiff is making such a request, the court finds a determination on the admissibility of evidence for trial is premature at this time, and is best left to the trial judge at the time of trial. Accordingly, such request is denied.

## III. Defendant's Motion for Summary Judgment (Doc. # 63).

### A. Standards for Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his plead-

ings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

■ "[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D. Kan. Rule 56.1.

### B. *Standards for a Pro Se Litigant.*

It is well settled that a federal court will construe liberally a pro se litigant's pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)(per curiam); *Fratus v. Deland,* 49 F.3d 673, 675 (10th Cir.1995); *Haskell v. United States Dep't of Agric.,* 743 F.Supp. 765, 767 n. 1 (D.Kan.1990), *aff'd,* 930 F.2d 816 (10th Cir.1991). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980); *Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988).

■ Nevertheless, pro se status does not absolve a litigant's duty to comply with fundamental procedural rules. *Ogden v. San Juan County,* 32 F.3d 452, 455 (1994), *cert. denied,* 513 U.S. 1090, 115 S.Ct. 750, 130 L.Ed.2d 650 (1995). *See also Milton v. Sully,* Civ. A. No. 92–2178–O, 1993 WL 141855, *1 (D.Kan. April 14, 1993) ("Although plaintiff as a pro se litigant is afforded some latitude in the construction of his pleadings, *see, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), he is still obligated to follow the same rules of procedure as any other litigant, *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992)."). *See also Cooper v. Davies,* 35 F.3d 574, 1994 WL 454532, *1 (10th Cir.1994) ("The relaxed treatment to which pro se cases are entitled does not excuse the requirement for production of evidence."); *Gorsline v. United States Dep't of Defense,* 45 F.3d 439, 1994 WL 722943, *3 n. 4 (10th Cir.1994) ("The latitude given for a litigant's pro se status does not require the court to formulate arguments or evidence."); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (It is not the court's function to become an advocate for the pro se litigant).

### C. *Factual Background*

■ Plaintiff Lemons, who appears pro se, does not properly controvert the defendant's statement of facts. *See* D. Kan. Rule 56.1. Plaintiff does not attempt to controvert the vast majority of the facts presented in defendant's statement of uncontroverted material facts. Plaintiff does attempt to controvert twelve statements of fact; however, plaintiff has failed to comply with the portion of our local rule requiring that "each fact in dispute ... shall refer with particularity to those portions of the record upon which the opposing party relies, ..." D. Kan. Rule 56.1. While plaintiff does refer the court generally to the trial transcript of the criminal prosecution in support of several of his statements of fact, such citation to the record is far too general to comply with the specific requirements set forth in Local Rule 56.1.

The material uncontroverted facts established in accordance with Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1 are as follows:

At all times material to this action, defendant Ramona K. Lewis was a police officer with the Kansas City, Missouri, Police Department, and a resident of the state of Missouri. On March 21, 1993, Lewis was working as a Detective in the Robbery Unit. That afternoon, two police officers contacted the Robbery Unit from the scene of a robbery at a Taco Bell restaurant, located on Vivian Road in Clay County, Missouri. Two detectives, Detective Jeff Reed and Detective

T.R. Davis, were sent to the Taco Bell to begin their initial investigation of the crime.

Officer Carrel, a police officer at the scene, obtained a description of the robber from employees at the Taco Bell. The employees described the suspect as a black male, approximately five feet, eight inches tall to five feet, nine inches tall, wearing a long, knee-length black trenchcoat and black trousers. The officer relayed this information to the police dispatcher, who broadcast the description over the police radio system. Officer Carrel interviewed the manager of the Taco Bell, who described the suspect as a black male, approximately seventeen to twenty years old, six feet tall, one-hundred fifty pounds, skinny build, and wearing a black hat, coat, and pants. A group of witnesses in the restaurant described the robber as a black male in his early twenties wearing a navy trenchcoat, black cap, black hose over his face, and jeans. The officers at the scene listed the names of each witness to the crime in their police reports, which were forwarded to the Robbery Unit case file. Detective Lewis was not at the scene on the day of the robbery, and only began work on the Taco Bell robbery after Detective Reed was transferred to another job within the police department.

On March 24, 1993, the TIPS Hotline received a phone call regarding the robbery of the Taco Bell. The caller identified the robber as a man who lived with a woman named Christine Mudd. Detectives interviewed Mudd; she told them that she had lived with a man named John Lemons, a black male.

Detective Reed showed a photographic spread, consisting of five black and white photos of black males, to two witnesses to the robbery. One witness identified the photo of plaintiff as the robber she saw fleeing the Taco Bell. The other witness identified the photo of plaintiff as being most similar to the robbery suspect. After being shown a photograph of plaintiff's profile, that witness identified plaintiff as the robber he saw fleeing the Taco Bell.

On April 29, 1993, Detective Reed issued a "pickup" order, requesting that the plaintiff be arrested for armed robbery based on the identification of the plaintiff by two witnesses

to the robbery. Detective Lewis had no involvement with any of the photographic lineups, or with issuing the pickup order for the arrest of plaintiff. On May 23, 1993, Detective Reed was transferred out of the Robbery Unit, and on July 1, 1993, Detective Lewis took over the investigation of the robbery.

On July 1, 1993, plaintiff was arrested by police officer Wolz at plaintiff's residence. Detective Lewis was not at the scene of the arrest, nor did she have any personal involvement with plaintiff's arrest on that date. Plaintiff was brought to the Kansas City, Missouri Police Headquarters, and booked on a charge of investigation of robbery. Later that day, Detective Lewis and Detective Scott Caron conducted a videotaped lineup in the lineup room at police headquarters. The lineup consisted of plaintiff, and two other African–American males. These two males were the only African–American males in custody that day who closely resembled the physical characteristics of plaintiff.

At the time of the lineup, the plaintiff was approximately five feet, six inches tall, weighed one-hundred forty-five pounds, and had black hair and a moustache. The other two subjects were approximately five feet, four inches tall, and five feet, five inches tall, respectively. One subject weighed one hundred forty pounds, the other weighed one hundred seventy-five pounds. One man had a moustache, while the other man had a moustache and goatee. The tape of the lineup was later introduced as evidence at plaintiff's criminal trial.

On July 1, 1993, after the lineup was conducted, Detective Lewis escorted plaintiff to the Robbery Unit, and gave plaintiff a copy of a written *Miranda* waiver. Plaintiff read the waiver out loud in the presence of Lewis. When Lewis asked plaintiff if he understood the waiver, he indicated that he did. Detective Lewis then asked plaintiff to sign the waiver. Plaintiff refused to sign the waiver, stating that he had not done anything, but that he knew about the police department's tricks and wanted to talk to a lawyer.

At that time, Lewis did not ask plaintiff any other questions, and plaintiff was imme-

diately returned to the Detention Unit. Plaintiff was thereupon released, pending further investigation of the crime. No formal statement of the plaintiff was used or introduced as evidence at plaintiff's criminal trial, except for the comments he made concerning the written *Miranda* waiver.

On July 21, 1993, another witness to the robbery, an employee of the Taco Bell, viewed the videotaped lineup. The witness positively identified the plaintiff as the perpetrator of the March 21, 1993, robbery. On July 26, 1993, based on this third eyewitness identification, Lewis forwarded the case file to the Clay County Prosecutor's Office. On August 4, 1993, an associate circuit judge of Clay County, Missouri, issued a robbery warrant for plaintiff's arrest.

On August 11, 1993, Kansas City, Missouri, Police Officer David Schroeder arrested plaintiff at plaintiff's residence in Kansas City, Missouri, on the outstanding warrant for his arrest. Schroeder transported plaintiff to police headquarters for booking. Detective Lewis did not arrest plaintiff, and had no personal contact with plaintiff either on the day of his second arrest, or at any time thereafter. On September 15, 1993, plaintiff was indicted by a grand jury in Clay County, Missouri, on charges of armed robbery and armed criminal action.

As part of the investigation, Lewis interviewed twenty-one witnesses to the crime, and attempted to locate four others. Lewis also requested a comparison of the fingerprints found at the crime scene with the fingerprints of plaintiff, which were already on file at the Kansas City, Missouri, Police Department. The Latent Print Examiner for the Kansas City, Missouri, Police Department subsequently informed Lewis that the fingerprints found at the crime scene were not of sufficient quality to make any comparison.

Plaintiff's criminal trial began on December 6, 1993. On December 8, 1993, the jury announced to the court that it was unable to reach a verdict, and the court declared a mistrial.

Plaintiff's original complaint named as additional defendants Detective Jeff Reed and the Kansas City, Missouri, Board of Police Commissioners. On April 1, 1996, this court dismissed the Kansas City, Missouri, Board of Police Commissioners as a defendant, on the grounds that the Board is not a suable entity. On November 22, 1996, the court dismissed Detective Reed as a defendant from this action, due to plaintiff's failure to obtain service of process. Consequently, defendant Ramona K. Lewis is the sole remaining defendant in this lawsuit.

### D. *Discussion.*

From the nature of plaintiff's pro se complaint, it is difficult for the court to discern which allegations plaintiff is bringing purely as state tort law claims, and which allegations he intends to raise as constitutional violations in support of his section 1983 claim. The court notes that plaintiff has not specifically identified each alleged cause of action in a separate count. Construing plaintiff's complaint liberally, the court will address plaintiff's allegations as asserting both federal civil rights violations and state tort claims, where possible.

Defendant Lewis moves for summary judgment as to five claims conceivably raised by plaintiff. Three of the claims apparently assert civil rights violations under section 1983. Plaintiff's allegations with respect to these claims are: (1) defendant subjected plaintiff to suggestive identification procedures; (2) defendant failed to properly investigate plaintiff's case; and (3) defendant violated plaintiff's *Miranda* rights. Two claims appear to allege state tort claims, as follows: (1) defendant subjected plaintiff to false arrest and false imprisonment; and (2) defendant engaged in malicious prosecution of plaintiff.

### 1. *Section 1983 Claims Against Detective Lewis.*

#### a. *Qualified Immunity Standards.*

As to each of the claims brought pursuant to 42 U.S.C. § 1983, defendant raises the defense of qualified immunity. The doctrine of qualified immunity recognizes the principle that government officials are protected from liability for civil damages unless their conduct violates "clearly established statuto-

ry or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir.1996); *Mason v. Stock,* 955 F.Supp. 1293 (D.Kan.1997).

■ When faced with a claim of qualified immunity, a court must first ascertain whether a plaintiff has sufficiently alleged the violation of any constitutional right at all. *Martinez v. Mafchir,* 35 F.3d 1486, 1490 (10th Cir.1994) (citing *Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991)). If the plaintiff fails to allege the violation of a constitutional right, the court need not reach the question of qualified immunity. *Id.* If the plaintiff has asserted the violation of a constitutional right, the court must then determine whether that right had been clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *Id. See also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. *Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir.1990). Rather, the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity, *Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988), and "demonstrate a 'substantial correspondence between the conduct in question and prior law ... establishing that the defendant's actions were clearly prohibited.'" *Hovater v. Robinson,* 1 F.3d 1063, 1066 (10th Cir.1993) (quoting *Hannula,* 907 F.2d at 130). "Unless such a showing is made, the defendant prevails." *Losavio,* 847 F.2d at 646; *see also Hannula,* 907 F.2d at 131.

■ Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains. *Trigalet v. Young,* 54 F.3d 645, 648 (10th Cir.), *cert.*

*denied,* —— U.S. ——, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995). "The key to this inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken." *Laidley v. McClain,* 914 F.2d 1386, 1394 (10th Cir.1990).

■ A claim of qualified immunity presents a question of law about whether the officer's actions were objectively reasonable. *Dixon v. Richer,* 922 F.2d 1456, 1460 (10th Cir.1991). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Hannula,* 907 F.2d at 131. Thus, a defendant is spared the burden of going forward "unless and until the plaintiff is able to meet the burden of establishing that the defendant's alleged actions violated clearly established law." *Gallegos v. City of Denver,* 984 F.2d 358, 361 (10th Cir.), *cert. denied,* 508 U.S. 972, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993).

The burden shifts to a defendant only if the plaintiff successfully carries his two-part burden. *Mason* at 1303. At that point, a defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity. *Mick* at 1134. This requires a defendant to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to him at the time. *Id.*

b. *Suggestive Identification Procedures.*

Plaintiff states in his complaint: "Det[ective] Lewis place[d] me in a line up with two people shorter than me, to make me look like I was the taller ..." Plaintiff's Complaint at 3. Notably, plaintiff does not include this allegation in the pre-trial order. Nevertheless, the court will consider plaintiff's allegation, and construing liberally, will view the allegation as a claim that Lewis subjected plaintiff to unduly suggestive lineup procedures.

Section 1983 imposes liability for conduct carried out under the color of state law which deprives a plaintiff of "rights, privileges, or immunities secured by the Constitution and

the laws." 42 U.S.C. § 1983. The Supreme Court has held that whether a defendant's due process rights are violated by the admission at trial of an unduly suggestive lineup depends upon the totality of the circumstances surrounding the lineup. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the court stated that "a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest," *Id.* at 113 n. 14, 97 S.Ct. at 2252 n. 14, and described its holding in *Stovall* "as protecting an evidentiary interest." *Id.* at 113 n. 3.

In *Hensley v. Carey*, 818 F.2d 646 (7th Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987), the Seventh Circuit considered the question of whether police officers may be held liable under section 1983 for conducting an improper lineup. There, the court stated:

> the procedural safeguards established in *Brathwaite* and *Stovall* protect only against the admission of unreliable evidence at trial and does [sic] not establish a constitutional right to be free of suggestive lineups.... The rule against admission of evidence from unnecessarily suggestive lineups is a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983.

*Id.* at 648–49.

The court in *Hensley* concluded that "*Stovall* and *Brathwaite* do not establish a right to an impartial lineup as long as the evidence gained through that lineup is not used at trial." *Id.* at 650. In reaching this conclusion, the court noted with approval *Christman v. Hanrahan*, 500 F.2d 65 (7th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974), and *Cerbone v. County of Westchester*, 508 F.Supp. 780 (S.D.N.Y.1981), which held that no violation of the due process clause occurs unless an improper identification has some prejudicial impact on an accused's defense. *See also Hutsell v. Sayre*, 5 F.3d 996, 1004–05 (6th Cir.1993), *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1071, 127

L.Ed.2d 389 (1994); *Sejnoha v. City of Bisbee*, 815 F.Supp. 1300, 1303 (D.Ariz.1993).

Here, plaintiff has presented the court with no evidence to suggest that the lineup procedures in any way impaired his Sixth Amendment right to a fair trial, or his Fourteenth Amendment right to due process. Plaintiff does not dispute that on December 8, 1993, the jury was unable to reach a verdict, and the court declared a mistrial. Subsequently, the prosecution elected not to re-prosecute plaintiff. Thus, plaintiff's defense was not prejudiced by the lineup procedures. *See Jones v. City of Chicago*, 639 F.Supp. 146, 151 (N.D.Ill.1986) (court, following reasoning in *Christman*, held no cause of action existed under § 1983 for violations of defendant's Sixth Amendment rights; court held trial was fundamentally fair where a mistrial was declared and the prosecutors dropped the charges against defendant).

Even if we were to consider the "suggestiveness" of the lineup, we would find under the facts before us that the lineup was not unduly suggestive. As noted in *Hensley*, police authorities are required to make every reasonable effort under the circumstances to conduct a fair and balanced presentation of alternative possibilities for identification, but they "are not required to conduct a search for identical twins in age, height, weight or facial features.... What is required is the attempt to conduct a fair lineup, taking all steps reasonable under the 'totality of the circumstances' to secure such result." *Hensley*, 818 F.2d at 650 (citation omitted).

The undisputed facts reflect that at the time of the lineup, plaintiff, an African–American, was approximately five feet, six inches tall, weighed one hundred forty-five pounds, and had black hair and a moustache. The other two subjects in the lineup were African–American males, who were approximately five feet, four inches tall, and five feet, five inches tall, respectively. One subject weighed one hundred forty pounds, the other weighed one hundred seventy-five pounds. One man had a moustache, while the other man had a moustache and goatee. The court concludes, under the totality of the

circumstances, that the lineup was not unduly suggestive.

Because we find that plaintiff has not alleged a violation of a constitutional right, we need not address defendant's contention that she is entitled to qualified immunity on this claim. *See Siegert,* 500 U.S. at 231–33, 111 S.Ct. at 1792–94. Accordingly, we find defendant is entitled to summary judgment on plaintiff's claim under section 1983 of suggestive lineup procedures.

### c. *Failure to Investigate.*

Plaintiff states in the pretrial order that "[t]he case was handled so poorly that John should not have been arrested from the beginning." Pretrial Order at 3. Defendant construes this statement as possibly an allegation that defendant failed to investigate the case, and argues that she is entitled to summary judgment.

■ With respect to this claim, the court finds that plaintiff has failed to articulate on what grounds any purported failure to investigate would constitute a violation of a constitutional right. Plaintiff's conclusory allegation that the case "was handled poorly" does not establish defendant committed a violation of plaintiff's constitutional rights. To prevail on a claim for damages for a constitutional violation pursuant to section 1983, a plaintiff must establish that a defendant acted under color of state law and caused or contributed to the alleged violation. *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir.1996). The uncontroverted facts establish that Lewis was not involved in any way with the initial investigation leading up to plaintiff's July 1, 1993, arrest.

As to defendant's involvement with the investigation after plaintiff's initial arrest, the court finds that plaintiff has presented no evidence to controvert defendant's factual showing that defendant conducted a proper investigation of the robbery. The undisputed evidence reflects that Lewis interviewed some twenty-one witnesses and attempted to interview four more. Lewis also assisted in creating a video lineup, which she showed to several witnesses to the robbery. Lewis attempted to take a statement from plaintiff; however, when plaintiff refused to sign a

*Miranda* waiver, Lewis terminated the interview. Lewis also requested a comparison of the fingerprints found at the crime scene with plaintiff's fingerprints, which were already on file with the Kansas city, Missouri, Police Department. The Latent Print Examiner for the Kansas City, Missouri, Police Department subsequently informed Lewis that the fingerprints found at the crime scene were not of sufficient quality to make any comparison.

In sum, we find plaintiff has failed to allege "the violation of any constitutional right at all." *Mafchir,* 35 F.3d at 1490; *Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793. Therefore, we need not reach defendant's claim of qualified immunity. *Mafchir,* 35 F.3d at 1490; *Siegert,* 500 U.S. at 231–33, 111 S.Ct. at 1792–94. Accordingly, summary judgment will be granted in favor of defendant on any section 1983 claim of failure to investigate.

### d. *Violation of Miranda Rights.*

Plaintiff states in the pre-trial order that "Lewis willingly and willfully violated [plaintiff's] *Miranda* rights by asking him to sign away his rights while questioning him, and stating his name while he was in a line up with two other people." Pretrial Order at 3. No allegation regarding any *Miranda* violation appears in plaintiff's complaint. The court will nonetheless address this claim.

■ *Miranda* warnings are not a constitutional right, and an officer's failure to issue *Miranda* warnings cannot form the basis for a civil rights claim under section 1983. *Lucero v. Gunter,* 17 F.3d 1347, 1350–51 (10th Cir.1994) (citing *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976)); *Warren v. City of Lincoln,* 864 F.2d 1436, 1442 (8th Cir.) (en banc), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). In *Bennett v. Passic,* the Tenth Circuit stated:

> The Miranda decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights be excluded from evidence. No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects

a police officer to liability under the Civil Rights Act [§ 1983].

*Id.* at 1263.

■ The uncontroverted facts reflect that on the day of plaintiff's initial arrest, Lewis escorted plaintiff to the police department and gave him a copy of a *Miranda* waiver, which plaintiff then read out loud in the presence of Lewis. Lewis asked plaintiff if he understood the *Miranda* waiver, and he indicated that he did. Lewis then asked plaintiff to sign the waiver. Plaintiff refused to sign it, and requested a lawyer. At that point, Lewis ceased questioning plaintiff. Plaintiff was subsequently released from custody, pending further investigation of the crime.

■ The court finds that plaintiff has failed to meet his initial burden of establishing the violation of a constitutional right. *Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793. Consequently, we need not address defendant's contention that she is entitled to qualified immunity on this claim. *Id.* at 231–33, 111 S.Ct. at 1792–94. While the court finds the foregoing undisputed facts do not demonstrate any *Miranda* violation, such determination is unnecessary. Even if the facts could be said to violate plaintiff's *Miranda* rights, the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action. *See Bennett v. Passic,* 545 F.2d at 1263. Therefore, defendant is entitled to summary judgment on this claim.

2. *State Tort Claims Against Detective Lewis.*

a. *Choice of Law.*

■ With respect to plaintiff's state tort claims, the court's first task is to determine what state's substantive law governs. A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Thus, this court looks to

Kansas law to determine which state's laws should be applied. Kansas follows the lex loci delicti approach of the First Restatement. *Brown v. Kleen Kut Mfg. Co.,* 238 Kan. 642, 644–45, 714 P.2d 942, 944 (1986); *Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). "Under this rule, the law of the state where the tort occurred is applied to the substantive rights of the parties." *Brown,* 238 Kan. at 645, 714 P.2d at 944. "[U]nder the doctrine of lex loci delicti, the situs of the injury determines the governing law." *Ling,* 237 Kan. at 634, 703 P.2d at 735. All of the actions of defendant about which plaintiff complains occurred in Missouri. Accordingly, the court finds that Missouri law governs plaintiff's tort claims.

b. *False Arrest/False Imprisonment.*

In his complaint, plaintiff states: "On 3–21–93 [1] the Det[ective] arrested me for a crime I did not commit. At Taco Bell; . . . ." Plaintiff's Complaint at 4. In the Pretrial Order, plaintiff alleges: ". . . John should not have been arrested from the beginning." Pretrial Order at 3. Viewed liberally, such allegations appear to allege a claim for false arrest or false imprisonment.

■ Under Missouri law, the elements for the torts of false imprisonment and false arrest are "functionally virtual." *Palcher v. J.C. Nichols Co.,* 783 S.W.2d 166, 168 (Mo.App.1990) (citing *Rustici v. Weidemeyer,* 673 S.W.2d 762, 767 (Mo.1984)). "A false arrest or false imprisonment occurs when there is confinement without legal justification by the wrongdoer of the person wronged." *Desai v. SSM Health Care,* 865 S.W.2d 833, 836 (Mo.App.1993) (citing *Day v. Wells Fargo Guard Serv. Co.,* 711 S.W.2d 503, 504–505 (Mo.1986); *Rustici,* 673 S.W.2d at 767; and *Warrem v. Parrish,* 436 S.W.2d 670, 672 (Mo.1969)). The elements of false imprisonment are the detention or restraint of the plaintiff against his will, and the unlawfulness of the detention or restraint. *Id.* at 836. Liability attaches where it is shown that defendant instigated, caused, or pro-

---

**1.** The evidence reflects that plaintiff's initial arrest occurred on July 1, 1993, not March 21, 1993.

cured the arrest. *Smith v. Lewis,* 669 S.W.2d 558, 562 (Mo.App.1983).

A showing of probable cause is a defense to a claim of false arrest or false imprisonment. *Palcher,* 783 S.W.2d at 169; *Bergel v. Kassebaum,* 577 S.W.2d 863, 873 (Mo.App.1978). "[A] prima facie showing of the presence of probable cause ... stands conclusive unless overcome by evidence that false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation." *Kvasnicka v. Montgomery Ward & Co.,* 350 Mo. 360, 166 S.W.2d 503, 510, 515 (1942).

To the extent plaintiff is attempting to assert a claim of false arrest/false imprisonment against Officer Lewis for plaintiff's initial arrest on July 1, 1993, summary judgment must be granted in favor of defendant. The initial arrest of plaintiff was conducted by Detective Reed, not Detective Lewis. Detective Reed is no longer a party to this lawsuit. According to Detective Lewis' affidavit:

> On April 29, 1993, then Detective Jeff Reed put out a pick-up order requesting that the Plaintiff be arrested for armed robbery based on the identification of the Plaintiff by two separate witnesses to the robbery. The Affiant [Lewis] had no involvement with any of the photographic line-ups prepared or shown to witnesses in the case or with issuing the pick-up for the arrest of the Plaintiff.

Defendant's Exhibit A, ¶¶ 21–22. Plaintiff has presented no evidence to controvert Lewis' assertion that she did not participate in any way in plaintiff's initial arrest. Because the record is devoid of evidence that Lewis instigated, caused, or procured the arrest, liability cannot attach. *Smith,* 669 S.W.2d at 562. Therefore summary judgment must be granted in favor of defendant on any claim of false arrest/false imprisonment regarding plaintiff's initial arrest.

With respect to the second arrest, it appears plaintiff bases his false arrest/false imprisonment claim on the grounds that plaintiff did not commit the offense. Plaintiff does not allege that his constitutional rights were violated because he was arrested without probable cause or without a warrant. Nor could he so allege based upon the undisputed facts. The uncontroverted evidence indicates that on July 26, 1993, Lewis sent defendant's case file to the Clay County Prosecutor's office. Her decision to send the file to the prosecutor's office was based on three positive identifications of plaintiff by eye-witnesses to the robbery. Plaintiff was arrested pursuant to a warrant issued by an associate circuit judge of Clay County, and subsequently indicted by a grand jury on charges of armed robbery and armed criminal action.

Plaintiff has presented no evidence to attack the validity of the warrant. We have reviewed the record and find that probable cause did exist to arrest plaintiff. Because probable cause existed to arrest plaintiff, plaintiff cannot succeed on his false arrest/false imprisonment claim. *See, Palcher,* 783 S.W.2d at 169; *Bergel,* 577 S.W.2d at 873. Accordingly, summary judgment will be entered in favor of defendant on any claim of false arrest/false imprisonment regarding plaintiff's second arrest.

### c. Malicious Prosecution.

Defendant construes plaintiff's complaint as possibly alleging the tort of malicious prosecution. A plaintiff must plead and prove the following six elements to prevail on a malicious prosecution action: (1) commencement of a prosecution against the plaintiff, (2) instigation by the defendant, (3) termination of the proceeding in favor of the plaintiff, (4) want of probable cause for the prosecution, (5) defendant's conduct was actuated by malice, and (6) plaintiff was damaged. *Sanders v. Daniel International Corp.,* 682 S.W.2d 803, 807 (Mo.1984); *Stafford v. Muster,* 582 S.W.2d 670, 675 (Mo. 1979).

Under Missouri law, a grand jury indictment "amounts to a prima facie showing that probable cause did exist for the prosecution." *Moad v. Pioneer Finance Co.,* 496 S.W.2d 794, 798 (Mo.1973) (citing *Pinson v. Campbell,* 124 Mo.App. 260, 101 S.W. 621, 624 (1907)). "[A] prima facie showing of the presence of probable cause ... stands conclusive unless overcome by evidence that

false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation." *Kvasnicka,* 166 S.W.2d at 510, 515.

The plaintiff was indicted by a grand jury on charges of armed robbery and armed criminal action. Plaintiff has presented no evidence to overcome this prima facie showing of probable cause. The existence of probable cause negates the fourth element of the cause of action for malicious prosecution. Because plaintiff has failed to present any evidence establishing this element, defendant is entitled to summary judgment.

Moreover, the court finds plaintiff has failed to present any evidence establishing malice, the fifth element of a malicious prosecution cause of action. To demonstrate "malice" for a malicious prosecution claim, "[a] plaintiff must establish that the defendant acted either with ill will toward the plaintiff or from any other improper motive." *Sanders,* 682 S.W.2d at 808. "To subject a person to liability for malicious prosecution, the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice." *Id.* at 814 (quoting The Restatement of Torts (Second) § 668 (1965)). Plaintiff has offered no facts to support the requisite showing of malice; accordingly, defendant is entitled to summary judgment on this basis as well.

Finally, the court observes that plaintiff appears to allege claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution, and a claim under 42 U.S.C. § 1985. In certain circumstances, a false arrest may constitute not only an action under state law, but a violation of civil rights pursuant to 42 U.S.C. § 1983, as well. *Nesmith v. Alford,* 318 F.2d 110, 126 (5th Cir. 1963), *cert. denied,* 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964). Malicious prosecution may also constitute a violation of civil rights under section 1983. *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir.1996); *Williams v. Weber,* 905 F.Supp. 1502, 1510 (D.Kan.1995). However, defendant has not moved for summary judgment as to any of these claims. Accordingly, they remain for trial.

The court observes that unless plaintiff has evidence in addition to that presented regarding these motions, it is highly unlikely plaintiff could make out a submissible case under section 1983 or section 1985 as to the claims remaining for trial. To expedite matters, the court would be amenable to allowing defendant additional time to file an appropriate motion out of time. Defendant is given ten days from the date of this order to file a motion for summary judgment as to the remaining claims, if she so desires.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reconsider the Dismissal Order On Defendant Board of Commissioners and Detective Reed (Doc. # 68) is denied.

IT IS FURTHER ORDERED that plaintiff's Motion to Enter Court Transcript of the Trial as Evidence Prior to Entering Judgment on a Summary Judgment (Doc. # 69) is granted.

IT IS FURTHER ORDERED that defendant Ramona K. Lewis' Motion for Summary Judgment (Doc. # 63) is granted. However, defendant did not move for summary judgment as to plaintiff's claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution, and his claim under 42 U.S.C. § 1985. Defendant is given leave to file a motion for summary judgment with respect to these claims, within ten (10) days of the date of this order.